The next case is the United States v. Cesiro. Now your adversary was confused, we've reached your adversary and he was confused about the time of the argument today, and so we're going to take that argument on submission. We're happy to hear from the appellee if you wish to argue, or you're also free to put your matter on submission if you wish. Your Honor, I'll speak if the Court will allow it. Good morning. May it please the Court. Thomas Sutcliffe on behalf of the United States. The District Court here did not abuse its discretion by denying the defendant's motion for spoliation sanctions, and that's true for three separate and independent reasons. First, the loss of data here was not chargeable to the government. It was FetLife, a private company, that terminated Detective Smith's account. Detective Smith did not ask FetLife to terminate that account, nor even have noticed that it was going to occur. Detective Smith also asked FetLife to reactivate it once he noticed that it had been deactivated, but FetLife never did. So the loss of any information here, if anything, was despite the government's efforts, not because of them. Second, the defendant has failed to establish that the lost information here had any conceivable exculpatory value. And I think it's important to be clear here about what was preserved and what was not. There is no dispute here that Detective Smith preserved and that the government produced every single communication between the defendant and the Haley persona, that is, communications that occurred over FetLife's direct messaging application. There also was no evidence below that the Haley persona and the defendant ever communicated by any other means on FetLife, whether that be comments on photographs, friend requests, or anything of the like. And even if there had been some interactions between the two of them, that somehow were not captured by Detective Smith or preserved through other means, there was uncontested evidence below that the defendant still retained access to his own FetLife account, and therefore presumably was able to access any of that data. So in short, everything that actually involved the defendant here was preserved. The only missing information would have consisted exclusively of Detective Smith's communications with third parties unrelated to this case. But those communications and interactions with third parties would not have shed any light on the defendant's offense conduct in this case or whether he had the requisite state of mind. So it was quite simply irrelevant. Did Detective Smith testify at trial that he had preserved all of the interactions involving the defendant? I don't recall if that's in his trial testimony. It's certainly in his affidavit testimony, the affidavit that the government submitted in opposition to the motion. I just don't recall whether it was also then again addressed at trial. The final reason why the motion, the district court was correct to deny the motion, is the fact that under Arizona v. Youngblood, the defendant was required to establish that the government acted in bad faith. And the district court here did not commit clear error by concluding that he had failed to meet that burden. Even assuming for the moment that Detective Smith violated some kind of a preservation obligation, there is no indication in the record that he did so for the purpose of trying to obtain some sort of tactical benefit at trial. Rather, he stated in his affidavit that the reason he did not collect screenshots of communications with third parties is because he determined that they weren't relevant to his investigation into this particular defendant. Now, for all the reasons previously stated, he was correct in that assessment. But even assuming he was not, Detective Smith's understanding of his preservation obligations, at the very least, was reasonable and plausible. There was no indication in the record that he was being dishonest as to his reasons. And the district court, therefore, was permitted to credit his explanation. So in short, the loss of any information here was not chargeable to the government, did not result in the loss of any exculpatory information, and was not the product of bad faith. As a result, this court should affirm the district court's denial of the motion for sanctions. Your Honors, with respect to the sufficiency claim, if I may, I'll state that my understanding of the defendant's argument is that he could not have been prosecuted in a New York State court because he could not have been prosecuted for attempted sexual abuse or attempted criminal sexual conduct because the substantial steps that he took towards attempting to have sex with a minor persona here all occurred in Vermont, and therefore, a New York court would not have had jurisdiction over the offense. And as far as that goes, the government doesn't disagree. That's probably an accurate assessment, given the limitations in New York State's extraterritoriality. Whoa. I'm very puzzled by your position here. Maybe I'm missing something about the New York State statutes. But you say the government was not undertaking to show a violation of New York State law being an attempt to violate the basic statute. But as I read New York State law, it's very, very clear. I read the statutes. Unless I'm missing something. It's very clear that an attempt committed outside the state to commit a crime inside the state is a violation of New York law that's prosecutable in New York. And I don't understand why you're presenting your arguments in that way. In addition, the way I understand your argument, you're saying, well, he committed acts that if they he attempted acts, which if they had been committed, would have been prosecutable in New York, being the realized crime. But under that analysis, the acts that constituted the attempt were committed in Vermont, and I don't know why the venue is being laid in New York rather than in Vermont. But let me get first to the New York statute that is not referenced, I think, in your brief, but it seems to be pertinent. This is New York Criminal Procedure Law 2020, and it says, except as otherwise provided in this section and in another section, a person may be convicted in the criminal courts of this state, that's New York, of an offense defined by the laws of the state when, even though none of the conduct constituting such offense may have occurred within the state, the offense committed was an attempt to commit a crime within the state. It seems to me that reads directly on this case, that even though none of the acts constituting the offense of attempt may have occurred within the state of New York, if it's an attempt to commit a crime under the laws of New York State, it is prosecutable as a crime within the state, as a violation of state law, prosecutable in the courts of the state. Why isn't that the answer to this question? Sure, I agree that's the applicable statute. We did set it in our brief, and I could be mistaken in my interpretation of the extraterritoriality statute or how it applies here. I think the issue is that if we were to just treat this as an attempt to commit one of the two underlying offenses, sexual abuse or criminal sexual conduct, the reason the government took that position is we were not confident that the defendant here actually committed any of the elements of either of those offenses within New York State. No, but the offense he committed was attempt. Attempt, and the statute very explicitly says, even though none of the conduct constituting such offense, being the offense of attempt, may have occurred within the state. Your Honor, and I apologize, I don't have the statute in front of me. Typically, unless it was, if I remember the statute right, there has to be either an element or an attempt to commit an element has to have occurred in New York State. How can you say that? Even though none, none of the conduct constituting such offense may have occurred within the state when the offense is attempt to commit a crime within the state. Your Honor, and I apologize, it may have been something that I missed. If you take a gun, if you're in Vermont, and you take a rifle in Vermont, and you pull the trigger in Vermont, aiming it at a person across the border in New York State with the intent to kill or seriously injure that person, and you pull the trigger, but something misfires, or you miss, or whatever, the crime of murder or assault or battery is not committed, but your attempt is prosecutable in New York as an attempt to commit the crime of murder in the state of New York. I don't see how the statute could be more explicit. Your Honor, in that, in the scenario you've described, the defendant would have at least taken a substantial step towards the commission of the crime in New York in the sense that he would have been presumably firing the gun while on the... You're saying that you're not sure that there was an attempt, that there was enough conduct to constitute the attempt? That was the government's thinking at the time, yes. I think I'm not sure the defendant, or at least there's an open question as to whether the defendant would have been considered to have taken a substantial step towards a sexual assault offense given the fact that all the conduct he committed, particularly the traveling to the parking lot in Bennington, Vermont on October 20th, given that so much of that conduct occurred in the state of Vermont, and given how important proximity is to establish an attempt to commit a sexual assault offense, that was why the government took that position. He certainly declared his clear intention to do all these atrocious things. And absolutely, Your Honor. He made an appointment to go and meet her at her home to do all those things. Absolutely, Your Honor. I guess the concern, the reason I didn't see the statute as being applicable was because he didn't take a substantial step. No conduct occurred. My reading of the statute at the time was that the intent alone, having been formulated in Vermont, would not have been sufficient. Making the appointment, arranging it with her mother, and making the appointment to meet at the mother's home and the child's home in New York, that's not conduct. My concern is that would not have been conduct under New York state law as it defines attempt to be sufficient to establish a substantial step that would not have been prosecutable by itself. But, Your Honor, and I could be mistaken, and obviously if the extraterritoriality statute would apply, then that would completely undermine the defendant's argument. If I may briefly, and I know my time has expired, I do just want to elaborate on the government's alternate argument for why the jurisdiction here doesn't really matter. The reason for that is... The second venue, the way you describe the relevance of all this, it sounds to me as if we're talking about acts committed in Vermont being prosecutable because they were... I'm not sure exactly what words you use, but because they are concrete steps. Well, you say to engage in any attempt to violate... What he did was done in Vermont. If you're not proceeding under the theory that an attempt is prosecutable outside the state, if it was an attempt to commit the crime in the state, then I don't know why this case is in New York. Your Honor, I don't think this is a venue issue. I think venue here is established by virtue of the fact that the defendant was communicating with a detective who was based in Albany at the time. That's the nexus to Vermont that allowed this to be brought in the northern district of New York. The issue I took to be with the defendant's argument was his claim that the predicate offenses, that is the offenses that the defendant was alleged to have tried to entice the child to commit, didn't have a sufficient nexus to New York for him to be prosecuted for those offenses. And the reason that's not a viable argument here is because the defendant, contrary to the way the defendant portrays it, the defendant was never prosecuted for attempting to commit substantive sexual assault under state law. He was convicted, of course, of attempted enticement. Under that provision, 2422B, the government only had to prove that the defendant attempted to entice the defendant to engage in sexual acts, not that he attempted to engage in the sexual acts themselves. So as long as there was evidence that the defendant took a substantial step towards trying to obtain a minor's consent or willingness to engage in sexual activity in New York State, in violation of the New York State statutes that the government identified in the indictment, then there was sufficient evidence. And there was evidence to that effect here. By no later than October 14th, 2020, the defendant and the Kayla persona, I'm sorry, the Haley persona, had devised a plan where the defendant agreed to meet with the Haley persona at her home in New York. And that plan remained in place for approximately six days. And it only abruptly changed on the morning of October 20th, 2020, when a work emergency rendered the defendant unable to travel to New York. But by that point, our point is the crime of enticement had already occurred because the defendant had already enticed someone based in New York to meet with him in New York for the purposes of engaging in sexual conduct that would have violated New York law. And that's based on all the communications leading up to the sudden change in the planned meeting location. Now, to be sure, the conduct that occurs in Vermont was certainly relevant in the sense that it shed light on the defendant's state of mind in those previous communications. But they weren't necessary here for a purpose of an enticement offense in the same way that they might have been necessary had this been a substantive state law prosecution. So at the very least on that ground alone, I think this court could have determined that the evidence here was sufficient. Unless the court has any further questions, the government will otherwise rest on its briefs. Thank you. Thank you and thank you for your patience with the calendar this morning, Mr. Sutcliffe. Of course. We'll take the matter under advisement.